IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GABRIEL ZAMBRANO TORRES,

Petitioner, No. 2:12-cv-2060 KJM CKD P

vs.

F. CHAVEZ,

Respondent. FINDINGS AND RECOMMENDATIONS

_______________________________/

Petitioner is a California prisoner proceeding pro se with a petition for writ of habeas corpus under 28 U.S.C. § 2254. He is serving a sentence of 27-years-to-life imprisonment following convictions in Solano County for sexual penetration by a foreign object of an unconscious victim and for committing a lewd act upon a child. Petitioner challenges his conviction and sentence for the sexual penetration offense.

I. Background

On direct appeal, the California Court of Appeal summarized the facts presented at petitioner's jury trial as follows:

> On September 25, 2009, the victim went to the emergency room of a hospital in Vallejo because of a flare-up of an incurable, chronic condition from which she suffers. She was given a medication intravenously for pain control that makes her "very drowsy" and "very sleepy." Defendant, a family friend of the victim's boyfriend

> who had known the victim for a few months, showed up at the hospital to provide support while the victim waited to be admitted to the hospital, even though the victim had told him that it was unnecessary for him to be there. The victim's boyfriend left around midnight to be with his and the victim's children, and defendant stayed with the victim.
>
> The victim was admitted to the hospital, and defendant was with her when she was transferred, on a hospital bed, from the emergency room to her own private room. A nurse administered another intravenous dose of the medication that made the victim drowsy. The nurse left the room, the victim started to feel "really sleepy" and she fell asleep. She woke up when she felt defendant's finger in her vagina. Her gown was open, her bra was unhooked, and her underwear and pants had been pulled down.

Resp't's Ex. 7 at 1-2.

II. Standard For Habeas Corpus Relief

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Also, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)."[1] It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

/////

[1] Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not grounds for entitlement to habeas relief. Fry v. Pliler, 551 U.S. 112, 119 (2007).

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

When a state court rejects a federal claim without addressing the claim, a federal court presumes the claim was adjudicated on the merits, in which case § 2254(d) deference is applicable. Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013). This presumption can be rebutted. Id.

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. "Clearly established" federal law is that determined by the Supreme Court. Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004). At the same time, it is appropriate to look to lower federal court decisions as persuasive authority in determining what law has been "clearly established" and the reasonableness of a particular application of that law. Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003),

overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo, 365 F.3d at 782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of Supreme Court precedent is misplaced).

Both of the claims presented in this action were presented on petitioner's direct appeal. The California Court of Appeal issued a reasoned decision concerning both of petitioner's claims. The claims were presented to the California Supreme Court via a "petition for review." Both claims were denied without comment.

III. Arguments And Analysis

A. Impeachment Evidence

In his first argument, petitioner asserts that his Fourteenth Amendment right to due process and his Sixth Amendment right to confront his accusers were violated when the trial court prevented petitioner from impeaching the testimony of the victim with evidence concerning two instances of alleged moral turpitude. On direct appeal, the California Court of Appeal summarized and analyzed petitioner's claim as follows:

> Before trial, defendant submitted a proposed witness list naming one Fairfield police officer and two Vacaville police officers, who were to testify for impeachment purposes about two separate incidents of prior bad acts involving the victim. One incident involved a report of domestic violence (hitting her husband several times in 2003), for which the victim was not prosecuted. The other incident involved a report in 2005 of child endangerment, in connection with the victim exposing her child to squalid conditions inside her apartment. The victim was charged with a violation of section 273a, subdivision (a) (child endangerment); however, the case was dismissed. The People filed a motion in limine to preclude defendant's counsel from asking the victim any questions regarding prior bad acts.
>
> As for the report of domestic violence by the victim, the prosecutor acknowledged that a felony violation of 273.5, subdivision (a) (corporal injury to spouse) was a crime of moral turpitude, but argued that it was unclear whether the victim actually committed that crime because charges were never filed and that the incident

/////

/////

should be excluded pursuant to Evidence Code section 352[2] in any event. The trial court ruled that the evidence was not admissible, because the incident was "not probative on the issue of credibility and under [Evidence Code section] 352, it's certainly more prejudicial than it would be probative. It would also be an undue consumption of time."

As for the charge that the victim exposed her child to squalid conditions in 2005, the prosecutor argued that the victim's conduct amounted to passive conduct that was not a crime or moral turpitude. Relying on *People v. Sanders* (1992) 10 Cal.App.4th 1268, the trial court agreed and excluded evidence regarding the child endangerment allegations.

After he was convicted, defendant proceeding with a new attorney, filed a motion for a new trial. Defendant argued, among other things, that the improper exclusion of the impeachment evidence justified granting a new trial. [Footnote omitted.] Attached to the motion were police reports regarding the incidents, documents that apparently were provided during pretrial discovery. The People opposed the motion, arguing that the trial court's ruling on the proposed impeachment evidence was correct. The trial court denied the motion stating that "given what I know about the entire trial, having observed it, and given what I know about all the information that [defendant's counsel] has provided, I still think, under [Evidence Code section 352], it was the proper analysis."

Defendant argues that the trial court committed reversible error by excluding the proffered impeachment evidence. Prior felony convictions that necessarily involve moral turpitude may be used to impeach a witness in a criminal proceeding, subject to the trial court's discretion under Evidence Code section 352. (*People v. Castro* (1985) 38 Cal.3d 301, 314-315.) Misconduct involving moral turpitude may suggest a willingness to lie and may be admissible even if the conduct did not result in a felony conviction. (*People v. Wheeler* (1992) 4 Cal.4th 284, 295-296; *People v. Martinez* (2002) 103 Cal.App.4th 1071, 1080-1081; *People v. Lepolo* (1997) 55 Cal.App.4th 85, 89-90.) However, "impeachment evidence other than felony convictions entails problems of proof, unfair surprise, and moral turpitude evaluation which felony convictions do not present. Hence, courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value." (*Wheeler* at pp. 296-297.) "[T]he latitude section 352 allows for exclusion of impeachment evidence

---

[2] Evidence Code section 352 provides that the trial court may, in its discretion, exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create a substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

in individual cases is broad. The statute empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues." (*Id.* at p. 296.) We review the trial court's ruling on the admission of past misconduct involving moral turpitude to impeach a witness for abuse of discretion. (*People v. Ardoin* (2011) 196 Cal.App.4th 102, 121.)

As far as the incident involving domestic violence in 2003, we find no abuse of discretion in the trial court's decision to exclude the evidence under Evidence Code section 352. There is no dispute that, had the victim suffered a felony conviction for violating section 273.5, subdivision (a) for hitting her husband, this would have qualified as a crime of moral turpitude for purposes of impeaching the victim's testimony. (E.g., *People v. Rodriguez* (1992) 5 Cal.App.4th 1398, 1402.) Because the victim was never charged with any crime, however, proof of the incident very well could have led the trial to "degenerat[e] into [a] nitpicking war of attrition over collateral credibility issues." (*People v. Wheeler, supra*, 4 Cal.4th at p. 296.) We also agree with the trial court that such testimony would have necessitated an undue consumption of time. (Evid. Code § 352.)

The trial court likewise did not err when it excluded evidence that the victim in 2005 faced a child endangerment charge (§ 273a, subd. (a)) that was later dropped. Even if the victim had suffered a conviction in connection with the incident, child endangerment is not a crime of moral turpitude, and impeachment by use of such a conviction therefore would have been improper. (*People v. Sanders, supra* 10 Cal.App.4th at p. 1270.) Defendant acknowledges *Sanders*, but argues that the police reports underlying the incident showed the victim's willingness to lie to law enforcement officers and that her conduct therefore was admissible as involving moral turpitude. (*People v. Lepolo, supra*, 55 Cal.App.4th at pp. 89-90 [admission of evidence of past misconduct should be determined solely on basis of whether conduct evinces moral turpitude]; cf. *People v. Lopez*, (2005) 129 Cal.App.4th 1508, 1523 ["evidence of mere arrests is inadmissible because it is more prejudicial than probative"].) As with the evidence of domestic violence allegations, such evidence had the strong potential to necessitate an undue consumption of time regarding the collateral credibility issues and was therefore properly executed.

Finally, we reject defendant's argument that limiting his ability to impeach the victim denied him of his rights to confront and cross-examine witnesses under the Sixth Amendment. "[N]ot every restriction on a defendant's desired method of cross-examination is a constitutional violation. Within the confines of the confrontation clause, the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance. [Citation.] California law is in accord.

> [Citation.] (*People v. Hamilton* (2009) 45 Cal.4th 863, 943.) "Ordinarily, proper application of the statutory rules of evidence does not impermissibly infringe upon a defendant's due process rights. [Citations.]" (*People v. Ardoin, supra*, 196 Cal.App.4th at p. 119.) ' "In particular, notwithstanding the confrontation clause, a trial court may restrict cross-examination of an adverse witness on the grounds stated in Evidence Code 352.' [Citation.] ' " [T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish. [Citation.]" [Citations.]' " (*Ibid.,* original italics.) "[R]eliance on Evidence Code section 352 to exclude evidence of marginal impeachment value what would entail the undue consumption of time generally does not contravene a defendant's Constitutional rights to confrontation and cross-examination. [Citation.]" (*People v. Brown* (2003) 31 Cal.4th 518, 545.) Unless the defendant can show that the prohibited cross-examination would have produced a a significantly different impression of the witness's credibility, the trial court's exercise of its discretion in this regard does not violate the Sixth Amendment. (*People v. Hamilton* at p. 943).
>
> Here, the trial court relied on Evidence Code section 352 to exclude evidence of alleged domestic violence, an incident with marginal impeachment value that would have entailed an undue consumption of time. Defendant cannot show that admission of that incident or the incident involving child endangerment would have produced a significantly different impression of the victim's credibility, and we therefore reject his Sixth Amendment argument. [Footnote Omitted.]

Resp't's Ex. 7 at 9-13.

As recognized by the California Court of Appeal, the Supreme Court has made clear that the Constitution does not guarantee a criminal defendant the right to attempt to impeach a witness in whatever way and to whatever extent they wish. Delaware v. Fensterer, 474 U.S. 15, 20 (1985). Trial judges retain wide latitude to impose reasonable limits on impeachment based on concerns about, among other things, harassment, prejudice, confusion of the issues, repetition, or marginal relevance. Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

Essentially, the Court of Appeal found that the trial court's exclusion of the impeachment evidence proffered by petitioner was not the result of an abuse of the discretion granted trial courts by Supreme Court precedent. The Court of Appeal's decision is not contrary to, nor does it involve an unreasonable application of, clearly established federal law, as determined by the

Supreme Court of the United States. Furthermore, the decision is not based on an unreasonable determination of the facts. Accordingly, petitioner is precluded from obtaining habeas relief by 28 U.S.C. § 2254(d) as to his first claim.

Furthermore, in order to obtain habeas relief as to his first claim, petitioner must show that the exclusion of the impeachment evidence described above had a substantial and injurious effect or influence in determining the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). It would not be reasonable to find that exclusion of the evidence described above from the jury's consideration had any meaningful effect on the jury's verdict in this matter.

B. Ineffective Assistance of Counsel

In claim two, petitioner asserts his trial counsel violated petitioner's Sixth Amendment right to effective assistance of counsel when counsel failed to object to a statement made by the prosecution during closing argument. The California Court of Appeal found there was no misconduct by the prosecution, therefore there was no ineffective assistance of counsel. Most of the Court of Appeal's decision regarding this claim concerns whether the statement made by the prosecution was appropriate. The Court of Appeal determined it was and then, in a footnote near the end of the decision, the court decided there was no ineffective assistance of counsel:

> After the victim woke up in the early morning hours with defendant's finger in her vagina, she "just started panicking," pulled out the tubes that were attached to her, and left the hospital building even after nurses tried to stop her from doing so. The nurse in charge of the victim's care asked the victim what happened, and the victim stated that "something bad really [*sic*] happened inside" her room and that she had told defendant to leave her hospital room. [Footnote omitted.] The victim immediately called her boyfriend after leaving the building and told him what happened. She testified she was not sure whether to contact police, because it was a "complicated" situation involving a family friend of her boyfriend. The victim eventually returned to her hospital room. Later that same day, after receiving a report of possible sexual assault, a police officer was dispatched to the hospital where the victim was staying, and the officer spoke with the victim. The victim testified that she spoke truthfully to police.
>
> During closing argument, defendant's attorney emphasized the victim's delay in reporting the incident, stating: "She's not sure

she wants to go to the cops. Why? If you had the same amount of fear–and remember what [the prosecutor]–there had been no testimony how sexual people [*sic*] react. You have all lived a life. If she's that scared, what was the debate? What was the debate that you run out in fear of the hospital and call 9-1-1, call the nursing staff and immediately tell them what happened. [¶] She never described what happened. She never told the nurse this happened."

In his rebuttal argument, the prosecutor emphasized that the victim was not confused about what happened, stating that the victim "never wavered" from her version of the incident, and that "[s]he never wavered from that when she spoke to the police or you would have heard that. If she said something different at the preliminary hearing, you would have heard that. And she didn't waver when she was here and testified at trial." The prosecutor also addressed the victim's interaction with the nurse when she left her hospital room, arguing without objection that the defense attorney "makes a big deal about the fact when [the victim] comes out and speaks with the nurse, that she doesn't tell her specifically what happened. I mean, is that so outrageous to you, that after a sexual assault has happened, that she says something to the effect that something just terrible happened to me in the room? [Defendant's attorney] is getting on her, saying, I guess it must not be real because she didn't look at the nurse and say, What happened in the room at that very moment was he stick [*sic*] his fingers insider her vagina while she was right out there in the hallway. Because she didn't say that specifically, then I guess that must not have happened. That's what she's trying to argue to you. [¶] Is it totally imaginable and believable to believe that a person who has just been sexually assaulted say something just as [the victim] did? Yeah. *And then, of course, she later told everyone, including hospital staff and the police what happened specifically."*

Defendant argues that the italicized portion of the prosecutor's rebuttal argument amounted to prosecutorial misconduct, because it falsely suggested that the victim had revealed specifics about the sexual assault to hospital staff and police. He claims that neither the nurse nor the police officer testified that the victim "revealed any specifics of the alleged sexual assault," whereas the prosecutor's argument "strongly suggested" that the victim "told those people specific facts that conformed to her trial testimony, but that for whatever reason, this testimony was not presented at trial. . ."

" 'The applicable federal and state standards regarding prosecutorial misconduct are well established. " 'A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due

> process." ' " [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves " ' "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " [Citation.]' [Citation.]" (*People v. Hill* (1998) 17 Cal.4th 800, 819.) "The prosecution may argue all reasonable inferences from the record, and has a broad range within which to argue the facts and the law." (*People v. Daggett* (1990) 225 Cal.App.3d 751, 757.)
>
> Here, the prosecutor argued reasonable inferences to be drawn from the record. After explaining why she was at first confused about whether she should contact authorities about defendant's actions, the victim testified on direct examination that police were called to the hospital and that she told police the truth. A police officer who went to the hospital testified that he was responding to a report of a possible sexual assault. A reasonable inference to be drawn from this evidence is that the victim told hospital personnel information that led them to contact police a about a sexual assault and that the victim told police what she testified to at trial. It was not necessary for the prosecutor to question the victim as to what, exactly, she told authorities, because she explained that she told police what she told the jury. Any questioning of the nurse or the police officer about what the victim told them (with the exception of the victim's spontaneous declaration) likely would have drawn a hearsay objection, which would explain why those witnesses were not asked on direct what the victim told them. Had the victim told hospital staff or police a story that conflicted with the account she provided at trial, defense counsel could have questioned witnesses about the inconsistent statements during cross-examination. That counsel did not do so suggested that the victim told consistent stories, as the prosecutor properly argued to the jury. The prosecutor's argument to the jury did not infect the trial with unfairness, and his tactics were not deceptive or reprehensible methods to attempt to persuade the jury.[3] (*People v. Hill*, *supra*, 17 Cal.4th at p. 819).

Resp't's Ex. 7 at 13-16.

The court agrees with the Court of Appeal that the comment to which petitioner objects amounted to reasonable inference which could have bee drawn from the evidence presented at

---

[3] Defendant also claims that his trial counsel's failure to object to the prosecutor's argument amounted to ineffective assistance of counsel. (People v. Hill, supra, 17 Cal.4th at p. 820 [claim of prosecutorial misconduct may be forfeited by failure to object below].) Because the prosecutor's argument did not rise to the level of misconduct, defendant cannot demonstrate the requisite prejudice from counsel's failure to object to the argument. (Strickland v. Washington (1984) 466 U.S. 668, 688, 694; People v. Stanley (2006) 39 Cal.4th 913, 954.)

trial. Therefore, there was no prosecutorial misconduct. Even if the court assumes the comment was objectionable, the trial court specifically instructed jurors:

> You must decide what the facts are in this case. You must use only the evidence that was presented in this courtroom.
>
> Evidence is the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence.
>
> Nothing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence.

RT 245. In light of the court's instruction, the court cannot find prejudice as is required for a successful showing of ineffective assistance of counsel. Strickland, 466 U.S. at 693.

Accordingly, petitioner's ineffective assistance of counsel claim should be rejected.

For all the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be denied; and

2. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the

/////

/////

specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 30, 2013

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
torr2060.157